1

2

3

4

UNITED STATES DISTRICT COURT
5       EASTERN DISTRICT OF WASHINGTON

6  | GEORGE TERRY LANGLEY, | No.   1:14-CV-3069-SMJ |

7                      Plaintiff,

8          v.                      **ORDER GRANTING  IN PART
                                   AND DENYING IN PART
                                   DEFENDANT'S MOTIONS FOR
9  | GEICO GENERAL INSURANCE   |   SUMMARY JUDGMENT AND
   COMPANY,                        DENYING MOTION FOR
10                                 SANCTIONS**

                      Defendant.
11

12            **I.     INTRODUCTION**

13         Before the Court, without oral argument, are Defendant's Motion for Partial

14  Summary Judgment Re: Bad Faith; CPA, ECF No. 65, Motion for Partial

15  Summary Judgment Re: Plaintiff's Loss of Use Claim, ECF No. 73, and Motion to

16  Hold Plaintiff in Contempt and For Sanctions, ECF No. 96.  Having reviewed the

17  pleadings and the file in this matter, the Court is fully informed and dismisses

18  Plaintiff's Bad Faith and Consumer Protection Act (CPA) claims but does not

19  dismiss the loss of use claim and finds sanctions are not warranted at this time.

20  //

ORDER - 1

## II.    **BACKGROUND**

**A.    Factual Background**[1]

At issue in this case is the handling of Plaintiff's insurance claim under GEICO policy insurance number 4262593512 regarding Plaintiff's Recreational Vehicle ("RV").  The RV was originally purchased with a salvage title by Sunwest through an online Co-Part auction for $50,500 on August 16, 2012.  In 2012 the RV was damaged in a collision, which some estimates indicate the repairs necessary exceed $134,000.  After the collision, salvage bids were sought on the RV, and of the two obtained the highest was for $10,000.

Plaintiff maintains that on September 26, 2012, and again on October 30, 2012, he put down a $40,000 cash down payment.  Both $40,000 cash payments are evidenced by only handwritten receipts.  Apparently, the $80,000 cash was moved from Plaintiff safe to Mr. Walsh's safe and the payments do not appear as deposits with Mr. Walsh's Central Valley Bank account.  Neither of these down payments is documented by an IRS Form 8300, which must be provided for any cash payment exceeding $10,000.

//

---

[1] In ruling on the motion for summary judgment, the Court has considered the facts and all reasonable inferences therefrom as contained in the submitted affidavits, declarations, exhibits, and depositions, in the light most favorable to the party opposing the motion.  *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999). However, in considering the facts, the Court does not rely on conclusory allegations unsupported by factual data, *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993), nor does the Court rely upon facts contained in affidavits which directly contradict the affiants prior deposition testimony, *Burrell v. Star Nursery, Inc.*, 170 F.3d 951, 955 (9th Cir. 1999).

Plaintiff maintains Sunwest fully repaired and restored the vehicle to like new, showroom floor condition, and subsequently sold it to Plaintiff on November 21, 2012, for $250,000, which after tax and licensing totaled $270,648.    In addition to the $80,000 cash payments, Plaintiff took out a $193,520 loan on November 21, 2012.    From the loan, $24,684.52 goes to pay off Plaintiff's previous loan on a different RV purchased from Sunwest, $112,719.12 apparently pays off a loan taken by Joel Ylvisaker regarding the subject RV, and $55,084.36 went to Sunwest.    Assuming $80,000 was paid in cash, and that the $112,719.12 paid from the loan to Mr. Ylvisaker went toward the purchase or repair of the RV, the total sum ever paid by Plaintiff equals only $247,803.48.

Plaintiff never test drove the vehicle, never drove the vehicle anywhere, and the RV remained parked on a storage lot until it was destroyed by fire on June 10, 2013, while being driven to a Pasco dealership by Sunwest employee David Hubbard for help replacing a generator.    Plaintiff never licensed the RV for personal use and the RV was licensed only as "Title Purpose Only" (TPO), use tax waived.    Sale tax is not paid on a TPO title and no evidence indicates Washington sales tax was ever paid on the RV.

On the same day the RV was destroyed by fire, Plaintiff submitted a claim to GEICO for the full alleged purchase price of $270,648.    GEICO undertook an investigation of the claim.    GEICO hired United Fire investigator Norm Loftin

who determined that the fire was likely caused by improper repair.  The muffler was located too close to the main electrical wiring, without a heat shield.  GEICO requested the Examination Under Oath (EUO) of Plaintiff on August 12, 2013. Prior to the EUO, Plaintiff provided GEICO with a packet of documents received July 31, 2013, which included Sunwest repair records, licensing records, and banking records.  After the EUO, on August 19, 2013, GECIO requested by letter for Plaintiff to supply any additional supporting documentation.  No documentation was sent.  Throughout the fall of 2013, Defendant made numerous requests for release authorizations and for production of IRS forms documenting the two, $40,000-cash down payments.  As of at least December 30, 2013, production of all bank records had not been completed.  No IRS forms documenting the two, $40,000-cash down payments have ever been produced.

Plaintiff maintains that Sunwest spent approximately $140,000 to fully repair and restore the vehicle to like new condition and that it was inspected by the state patrol and sold on November 21, 2012.  Of the records before this Court, the receipts submitted by Sunwest, many of which are handwritten and illegible, total little more than $50,000.  Plaintiff's expert places the vehicles value, based upon a total repair, after a reconstructed title adjustment as $242,863.66. Defendant's expert maintains that the vehicle was unrepairable, due to hidden

damage, frame damage, and damage to the house structure, and therefore determined the RV's value never exceeded the salvage value.

On February 19, 2014, within 60-days of December 30, 2013, Defendant provided notices that "GEICO is invoking the appraisal provision" and paid Plaintiff the original purchase price for the salvage title RV of $50,500. At the time of the $50,500 offer to Plaintiff, Defendant had before it a salvage bid of $10,000, their expert valuation placing the value at no more than $20,000, and the $50,500 purchase price paid by Sunwest. To date, the appraisal process remains ongoing, and the appraisal value of the RV has not been determined.

**B.    Procedural Background**

On May 6, 2014, Plaintiff filed the current lawsuit against Defendant in Yakima County Superior Court, which Defendant subsequently removed to this Court on May 27, 2014. ECF No. 1.

On July 1, 2014, Defendant moved to compel compliance with the insurance policy's appraisal provision. ECF No. 5. After the Court granted the appraisal on August 29, 2014, ECF No. 25, Plaintiff sough reconsideration, ECF No. 26, which was denied, ECF No. 30. Subsequently, Defendant moved twice to compel Plaintiff's compliance with the appraisal process, ECF Nos. 31 & 41, which the Court subsequently granted. ECF No. 47.

//

On November 4, 2014, Defendant moved to dismiss Plaintiff's claim for *Olympic Steamship* attorney fees on the grounds that no denial of coverage occurred. ECF No. 36. On December 8, 2014, the Court dismiss the *Olympic Steamship* attorney fee claim based upon Plaintiff concurring that dismissal was proper, ECF No. 37. ECF No. 48.

On December 18, 2014, Defendant filed for partial summary judgment on Plaintiff's IFCA claim. ECF No. 49. On February 24, 2015, the Court denied Defendant's motion. ECF No. 81.

On January 7, 2015, Plaintiff moved to continue discovery. ECF No. 50. On January 15, 2015, the Court denied Plaintiff leave to depose Defendant's appraiser Gary Halpin, finding no deposition was permitted under the Federal Rules of Civil Procedure, but granted a brief extension of discovery. ECF No. 58. Unlike Mr. Smith, who Plaintiff retained as both a litigation expert and as an appraiser for the appraisal process, the Court found Mr. Halpin was solely utilized as an appraiser, for which the Federal Rules did not require a deposition. *Id*. A few weeks later, Plaintiff again sought a discovery continuance. ECF No. 60. In granting the continuance, the Court permitted Plaintiff to take a Rule 30(b)(6) Deposition of Defendant, ECF No. 67, but before the deposition was taken, the Court granted a Protective Order, ECF No. 79. Among other issues, the Protective Order specifically limited the scope of inquiring into Mr. Halpin and

Judge Carrol's relationships with GEICO, as well as, barred inquire into Mr. Halpin selection as an appraiser. *Id*. The Court again reinforced that Mr. Halpin was "the non-testifying appraiser for the insurance policy's appraisal process." *Id*. at 5.

Based upon the Court's prior rulings and the pending appraisal, the Court granted a continuance and issued new case deadlines. ECF Nos. 82 & 88.

Defendant now seeks sanctions and a finding holding Plaintiff in contempt, ECF No. 73, as well as, dismissal of Plaintiff's bad faith, Consumer Protection Act (CPA), and loss of use claims. ECF No. 65 & 73.

### III.   <u>MOTIONS FOR SUMMARY JUDGMENT</u>

**A.   Legal Standard**

Summary judgment is appropriate if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once a party has moved for summary judgment, the opposing party must point to specific facts establishing that there is a genuine dispute for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). If the nonmoving party fails to make such a showing for any of the elements essential to its case for which it bears the burden of proof, the trial court should grant the summary judgment motion. *Id.* at 322. "When the moving party has carried its burden under Rule [56(a)], its opponent must do more than simply

show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (internal citation omitted) (emphasis in original). When considering a motion for summary judgment, the Court does not weigh the evidence or assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). When considering the summary judgment motion, the Court 1) took as true all undisputed facts; 2) viewed all evidence and drew all justifiable inferences therefrom in non-moving party's favor; 3) did not weigh the evidence or assess credibility; and 4) did not accept assertions made that were flatly contradicted by the record. *See Scott v. Harris*, 550 U.S. 372, 380 (2007); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

**B.    Discussion**

Through two partial summary judgment motions, Defendant seeks dismissal of Plaintiff's Bad Faith, CPA, and Loss of Use claims.

1.    <u>Bad Faith</u>

Insurers have a duty to deal fairly and in good faith with their insureds. RCW 48.01.030.   A denial of coverage that is unreasonable, frivolous, or

unfounded constitutes bad faith. *Kirk v. Mt. Airy Ins. Co.*, 134 Wn.2d 558, 560 (1998). The test for bad faith denial of coverage is not whether the insurer's interpretation is correct, but whether the insurer's conduct was reasonable. *Torina Fine Homes v. Mutual of Enumclaw Ins. Co.*, 118 Wash.App. 12, 21 (2003). Whether an insurer acted in bad faith remains a question of fact. *Smith v. Safeco Ins. Co.*, 150 Wash. 2d 478, 485 (2003). As to resolving a bad faith claim at summary judgment, the Washington Supreme Court has provided the following:

> If the insured claims that the insurer denied coverage unreasonably in bad faith, then the insured must come forward with evidence that the insurer acted unreasonably. The policyholder has the burden of proof. The insurer is entitled to summary judgment if reasonable minds could not differ that its denial of coverage was based upon reasonable grounds. If, however, reasonable minds could differ that the insurer's conduct was reasonable, or if there are material issues of fact with respect to the reasonableness of the insurer's action, then summary judgment is not appropriate. If the insurer can point to a reasonable basis for its action, this reasonable basis is significant evidence that it did not act in bad faith and may even establish that reasonable minds could not differ that its denial of coverage was justified. However, the existence of some theoretical reasonable basis for the insurer's conduct does not end the inquiry. The insured may present evidence that the insurer's alleged reasonable basis was not the actual basis for its action, or that other factors outweighed the alleged reasonable basis.

*Smith v. Safeco Ins. Co.*, 150 Wash. 2d 478, 486 (2003) (citation omitted).

Here, the Court finds the record establishes that reasonable minds could not differ that the insurer's conduct was reasonable. Plaintiff's lawsuit is premised upon two key issues 1) that Defendant withheld benefits for over eight months

before accepting coverage, and 2) provided a "low-ball" valuation of only $20,000.

First, Defendant had a reasonable basis to conduct an eight month investigation into the purchase price paid for the RV and to determine the RV's actual value. The RV initially sustained damages approximated at around $134,000, but the receipts provided to Defendant with the insurance claim totaled little more than $50,000. Additionally, much of the delay resulted from the continued record requests to demonstrate the purchase price actually paid for the RV. On the day of the fire, Plaintiff made a claim to Defendant for the full purchase price of $270,648. However, the only evidence of this amount was two paper receipts for $40,000 cash payments, and a loan disbursement in which only $55,084.36 went to Sunwest. This necessitated an investigation into the cash payments and where the $112,719.12 paid from the loan to Mr. Ylvisaker went. Throughout the fall of 2013, Defendant made numerous requests for release authorizations and for production of IRS forms documenting the two, $40,000-cash down payments. As of at least December 30, 2013, production of all bank records had not been completed and the IRS 8300 forms never were produced to prove the $40,000 cash payments occurred. "Financial records of the insured are 'relevant and material' once the insurance company has reason to broaden its investigation into the insured's possible financial motive for overvaluing or

misrepresenting his claim." *Keith v. Allstate Indem. Co.*, 105 Wn. App. 251, 255 (2001) (citing *Tran v. State Farm Fire and Casualty Co.*, 136 Wn.2d 214, 227 (1998)). As the Court has previously stated "[t]his documentation, in light of the two $40,000 cash payments, was reasonably required by the insurer to determine its liability and the actual amount Plaintiff paid for the vehicle, especially where Plaintiff asserted loss in the full value of his purchase price." ECF No. 30 at 3. Based upon the record before this Court, assuming in Plaintiff's favor that the two paper receipts for $40,000 cash payments are genuine despite the absence of two required IRS Form 8300s, Defendant's investigation only produced documentary evidence of a total paid price of $247,803.48. Accordingly, a reasonable basis existed for Defendant's investigative actions which took eight months to complete. Based upon this record, the Court finds reasonable minds could not differ in finding the investigation was justified.

Second, Defendant ultimately paid Plaintiff $50,500 after its experts determined the RV's value was $20,000. Plaintiff maintains this was a bad faith "low-ball" valuation of the RV, resulting in a denial of benefits under the insurance contract. While the valuation of the RV in the appraisal process is ongoing, the ultimate award from the appraisal is immaterial at this time. "The difference between the amount of the offer and the final award alone is insufficient to show that the insurer acted in bad faith or committed an unfair and

deceptive act." *Beasley v. State Farm Mut. Auto. Ins. Co.*, No. C13-1106RSL, 2014 WL 1494030, at *5 (W.D. Wash. Apr. 16, 2014) citing *Keller v. Allstate Ins. Co.*, 81 Wash.App. 624, 633–34 (1996) (finding, where insured recovered $75,200 at trial when insurer had only offered $8,000, the offer of $8,000, while substantially less than the final recovery, was not a bad faith offer as a matter of law because the record contained a reasonable justification for insurer's offer at the time it was made).  Here, as of February 2014, when Defendant offered $50,500, Defendant had before it 1) Plaintiff's claimed purchase price of $270,648,[2] 2) the original savage bid of $10,000, 3) Poulsbo R.V.'s estimate of $20,000, 4) repair receipts totaling about $50,000, and 5) Sunwest's purchase price of $50,500.  Accordingly, while Defendant's offer may be proved inaccurate at appraisal, it was sufficiently justified at the time it was made, and therefore under Washington law, this Court finds reasonable minds could not conclude Defendant acted in bad faith.  Therefore, Plaintiff's bad faith claim is dismissed.

2.    Consumer Protection Act (CPA)

To prevail on a CPA claim, Plaintiff must show: 1) an unfair or deceptive act or practice; 2) in trade or commerce; 3) which affects the public interest; 4) that injured the plaintiff's business or property; and 5) that the unfair or deceptive act complained of caused the injury suffered.  *Hangman Ridge Training Stables,*

---

[2] However, of this amount, $80,000 in cash was not demonstrated by IRS 8300 forms and the loan only provided $55,084.36 to Sunwest.

*Inc. v. Safeco Title Ins. Co.*, 105 Wash.2d 778, 784–85 (1986). All five elements must be established. *Id.* However, even where it is found that an insurer made a technical violation of WAC 284.30, an insurer's reasonable conduct is a defense to a claim of unfair act or practice under the CPA. *Starczewski v. Unigard Ins. Co.*, 61 Wn. App. 267 (1991).

Here, there may well be technical violations of the WAC, however, the Court is bound to the determination above that Defendant's conduct was reasonable, which under Washington law preclude a finding by this Court that the CPA was violated. Accordingly, Plaintiff's CPA claim must be dismissed.

3.   <u>Loss of Use</u>

As articulated in Plaintiff's Complaint, ECF No. 1-2 at 2, and as developed by case law, the loss of use claim is inherently a matter of damages, which is not an independent claim, but is dependent upon a finding of wrongful conduct by a defendant. "The rule with respect to loss of use of an automobile is that the owner may recover, **as general damages**, the use value of which he is deprived **because of** the defendant's wrongful act." *Holmes v. Raffo*, 60 Wash. 2d 421, 430 (1962) (citations omitted) (emphasis added). Plaintiff's claim appears to assert that Defendant's conduct and investigation following the loss of the vehicle deprived

ORDER - 13

1   Defendant of a long-awaited trip and the insurance money needed to fully replace

2   the lost vehicle or payoff the loan.  ECF No. 1-2 at 2.[3]

3         Defendant maintains this matter may be resolved on summary judgment

4   because the rights of the parties are fixed at the time of loss, and at the time of loss

5   Plaintiff was unable to use the R.V.  The Court disagrees.

6         First, Defendant is correct that at the time of loss, Plaintiff could not legally

7   operate the R.V. on the road, and that Plaintiff testified at the Examination Under

8   Oath (EUO) that he had not used any of the electrical equipment on the R.V.

9   However, loss of use damages includes the present and intended use of the

10  personal property.  *See Holmes v. Raffo*, 60 Wash. 2d 421, 430 (1962) ("The value

11  of the use of personal property is not the mere value of its intended use but of its

12  present use.  The value of an article to its owner . . . lies in his right to use, enjoy,

13  and dispose of it. . . whether he, in fact, avails himself of his right of use does not

14  in the least affect the value of his use.").[4]  Additionally, loss of use can include the

15  loss of use of money.  *See Griffin v. Allstate Ins. Co.*, 108 Wash. App. 133, 148

16  (Wash. Ct. App. 2001) (noting that "[l]oss of use of money is a recognized

17

18  ───────────────
    [3] As it has not been addressed by the parties briefing, the Court does not reach the question whether the loss of use is a permitted damage recoverable under the claims Plaintiff has alleged.

19  [4] The Court notes that Defendant's Reply, ECF No. 99 at 3, contains the first sentence of this quotation both underlined and bolded.  Defendant maintain this sentence stands for the proposition that only present use is permitted.  *See* ECF No. 9 at  Out of context, that sentence is itself sufficiently vague to possibly include this interpretation, however, when read in context with the following two sentences, it clearly states the value include both the 1) "mere value of its intended use" and 2) its "present use."  Counsel is cautioned not to misuse quotations out of context in the future.

20

ORDER - 14

damage"). Accordingly, the Court finds Plaintiff's damages claim does not fail as a matter of law just because he never used the R.V.

Defendant also maintains the value of the use is fixed at the time of loss. While it is true that a valuation must be determined as of the date or time of loss, *see* 12 Couch on Ins. § 175:7, each of the examples cited to this Court involve the fixing of the value of the insured item arising under the policy. For example, Defendant's citation to Couch on Insurances states "[t]he extent of the loss under a property protection policy must be estimated upon the value of the property covered by the contract of insurance, determined as of the date or time of the loss." Here, the valuation at issue is not the insured vehicle and the claim does not arise as a coverage under the policy. To the contrary, Plaintiff's loss of use claim, articulated in paragraph 3.5 of the Complaint, ECF No. 1-2 at 2, arises from Defendant's alleged conduct after the loss of the R.V. and raises the issue of the valuation of the use, not the valuation of the insured vehicle. Neither party has cited,[5] nor has this Court found, any authority fixing the valuation of use of the vehicle to the date and time of the loss of the vehicle. To the contrary, the Washington Court of Appeals, while reversing a dismissal of a loss of use claim

---

[5] Defendant attempts to rely upon *Price v. City of Seattle*, No. C03-1365RSL, 2006 WL 2691402, at *6 (W.D. Wash. Sept. 19, 2006), for the proposition that loss of use cannot be recovered if a plaintiff cannot legally operate the vehicle. However, while *Price* noted that many of the propose class members were not legally entitled to operate their vehicles, it did so in the context of denying class certification. *Id.* at 5-6. *Price* did not find the inability to legally operate the vehicle precluded the claim for loss of use, instead it simply demonstrated the infeasibility of Plaintiff's proposed method of proof of damages for the entire class.

as a matter of law, rejected the contention that no loss of use could be recovered when the property was totally destroyed. *Straka Trucking, Inc. v. Estate of Peterson*, 98 Wash. App. 209, 213 (1999). While distinguished from prior cases the court noted it was presented with a scenario concerning a "loss of use *before* the tortfeasor pays, or, in alternative terms, with loss of use from the date of the accident to the date on which the tortfeasor pays (or tenders) the full value of the destroyed property." *Id*. (emphasis in original). Like, *Straka,* Plaintiff's loss of use claim concerns use after the date of the accident. Therefore, the Court does not find Plaintiff is bound to the value of his use at the time of the loss of the vehicle.

Accordingly, the Court is not convinced that Defendant is entitled to summary judgment on the loss of use claim; Defendant's motion is denied.

### IV.    <u>CONTEMPT AND SANCTIONS</u>

**A.    Legal Standard**

"All federal courts are vested with inherent powers enabling them to manage their cases and courtrooms effectively and to ensure obedience to their orders. . . . As a function of this power, courts can dismiss cases in their entirety, bar witnesses, award attorney's fees and assess fines." *F.J. Hanshaw Enters., Inc. v. Emerald River Dev., Inc*., 244 F.3d 1128, 1136 (9th Cir. 2001) (citations omitted). Sanctions are an appropriate response to "willful disobedience of a

court order . . . or when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Fink v. Gomez*, 239 F.3d 989, 991 (9th Cir. 2001) (internal quotation marks and citations omitted). Appellate courts defer "to the determination of courts on the front lines of litigation [that sanctions are warranted]" because deference "will enhance these courts' ability to control the litigants before them." *Cooter & Gell v. Hartmarx Corp*., 496 U.S. 384, 404 (1990). Accordingly, a district court's findings in a sanctions case are "given great deference." *F.J. Hanshaw Enters., Inc*., 244 F.3d at 1135; *see also Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1411 (9th Cir. 1990) ("A determination that an order was disobeyed is entitled to considerable weight because a district judge is the best equipped to assess the circumstances of the non-compliance." (internal quotation marks and citations omitted)).

**B.  Discussion**

Defendant asks this Court to hold Plaintiff in contempt and to impose sanctions. Previously, this Court found Mr. Halpin could not be deposed in this federal litigation and limited the scope of the Rule 30(b)(6) inquiry into Defendant's relationship, if any, with the appraisal umpire Judge Carrol. *See* ECF Nos. 58 & 79.

Subsequent to the Court's orders, Plaintiff's policy appraiser and litigation expert, David Smith, wrote the umpire requesting a deposition of Mr. Halpin.

ECF No. 97-1.  Additionally, Plaintiff's attorney, David Trujillo, wrote the umpire requesting a deposition of Mr. Halpin and for further disclosures of relationships and dealings from Judge Carrol.  ECF No. 97-6.  Because Plaintiff is seeking from the umpire what this Court already denied, Defendant seeks sanctions.

While clearly Plaintiff is attempting to take a second bite at the apple through the appraisal process, this Court finds sanctions cannot be imposed at this time.  The Court's ruling on deposing Mr. Halpin was specifically founded upon the Federal Rules of Civil Procedure and the process due in litigating this matter in federal court.  By the same measure, the Court's ruling on the Protective Order was for the limited confines of the 30(b)(6) deposition and based upon federal civil procedure and evidence rules.  While the appraisal process **is not** "essentially a private arbitration," ECF No. 109 at 2, it is a separate proceeding before an Appraisal Panel with Judge Carrol as umpire, and Mr. Halpin and Mr. Smith as appraisers.  Therefore, absent controlling case law or statutory authority, what procedure is to be followed in the appraisal process is best decided by the appraisal panel.[6]  As Mr. Halpin stated, the umpire can "guide us through the procedural aspects."  ECF No. 112-2 at 1.  This Court's authority is limited to enforcing the contractual rights contained in the insurance policy and deciding whether to accept the appraisal award once the process is completed.

---

[6] The Court notes the umpire has already indicated some of the procedures that will be utilized.  *See* ECF No. 110-1 at 8 ("Any proposed witnesses will be available for a telephonic interview if requested.  Further, more formal discovery will only be permitted by agreement of the insured and insurer or my authorization.").

Accordingly, the Court finds nothing impermissible about *asking* the umpire whether a deposition[7] can be taken and whether the umpire will expand his disclosures, despite this Court denying Plaintiff's requests seeking the same but in a different context.  Therefore, Defendant's motion is denied.

Accordingly, **IT IS HEREBY ORDERED**:

1.    Defendant's Motion for Partial Summary Judgment Re: Bad Faith; CPA, **ECF No. 65**, is **GRANTED.**

2.    Defendant's Motion for Partial Summary Judgment Re: Plaintiff's Loss of Use Claim, **ECF No. 73**, is **DENIED.**

3.    Defendant's Motion to Hold Plaintiff in Contempt and For Sanctions, **ECF No. 96**, is **DENIED.**

**IT IS SO ORDERED.**  The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this 10th day of April 2015.

_____
SALVADOR MENDOZA, JR.
United States District Judge

---

[7] The Court leaves unaddressed whether the umpire even has this authority.