FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 23, 2016

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

GEORGE TERRY LANGLEY,

Plaintiff,

v.

GEICO GENERAL INSURANCE
COMPANY,

Defendant.

No.   1:14-CV-03069-SMJ

**FINDINGS OF FACT AND
CONCLUSIONS OF LAW**

A bench trial was held August 15, 2016, through August 18, 2016. David Burton Trujillo and Kirk D Miller appeared on behalf of Plaintiff George Terry Langly. Alfred E. Donohue appeared on behalf of Defendant GEICO General Insurance Company. On August 18, 2016, after considering all of the evidence presented at the bench trial and reviewing the portions of the record designated by the parties, the Court stated findings of fact and conclusions of law on the record pursuant to Federal Rule of Civil Procedure 52(a). The following findings of fact and conclusions of law confirm and supplement the Court's oral findings and conclusions.

Also before the Court are Defendant's Motion for Judgment on Partial Findings Regarding the Insurance Fair Conduct Act Claim, ECF No. 291, and

FINDINGS OF FACT AND CONCLUSIONS
OF LAW **-** 1

Defendant's Rule 52(c) Motion for Judgment Dismissing Plaintiff's Claim for Injunctive Relief, ECF No. 292. The Court denied Defendant's Motion for Judgment on Partial Findings in an oral ruling on August 18, 2016. This written decision confirms that ruling. With respect to Defendant's Motion for Judgment Dismissing Plaintiff's Claim for Injunctive Relief, the Court is fully informed and grants the motion.

## PENDING MOTIONS

After close of Plaintiff's case, GEICO moved for Judgment on Plaintiff's Insurance Fair Conduct Act claim (IFCA), ECF No. 291. The Court denied this motion in an oral ruling on August 18, 2016. As the Court explained, the IFCA creates a cause of action for violation of the Washington Administrative Code provisions enumerated in Revised Code of Washington (RCW) Section 48.30.015(5). ECF No. 81 at 12–15. GEICO has not presented a sufficient basis for the Court to revisit that decision, and the Court found that, following Plaintiff's presentation of evidence, material issues of fact remained concerning whether GEICO violated WAC 284-30-330(7).

GEICO also filed a motion pursuant to Federal Rule of Civil Procedure 52(c) to dismiss Langley's claim for injunctive relief. ECF No. 292. A plaintiff may bring an action for injunctive relief under Washington's Consumer Protection Act (CPA). Wash. Rev. Code § 19.86.090. In the Washington State courts, a plaintiff may ask

FINDINGS OF FACT AND CONCLUSIONS
OF LAW - 2

a court to enjoin the defendant's conduct even if the injunction will not enjoin the plaintiff's own private interests. *See Scott v. Cingular Wireless*, 161 P.3d 843, 853 (Wash. 2007). However, the standing requirements of Article III of the United States Constitution apply to limit this Court's jurisdiction to consider such claims.

To establish Article III standing, a plaintiff must show that:

> (1) [he] has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180–81 (2000). "In the context of injunctive relief, the plaintiff must demonstrate a real or immediate threat of an irreparable injury." *Hangarter v. Provident Life and Accident Ins. Co.*, 373 F.3d 998, 1021 (9th Cir. 2004).

Plaintiff asks this Court to order GEICO to take affirmative policy actions to prevent future violations and to enjoin GEICO "from ever again engaging in the conduct complained of." ECF No. 1-2 at 7. There is no evidence in the record indicating that Langley will suffer an injury in fact if the court does not order the requested injunctive relief. Accordingly, this court lacks jurisdiction to consider Langley's claim for injunctive relief, and therefore grant's Defendant's motion for judgment dismissing the claim.

FINDINGS OF FACT AND CONCLUSIONS
OF LAW - 3

# FINDINGS OF FACT

The Court makes the following findings of fact from the evidence and testimony presented at the bench trial:

*Langley's Purchase from Sunwest*

1. On March 3, 2012, Plaintiff George Langley purchased a Ford E450 Sunseeker motorhome from Sunwest, Inc. Langley never took possession of that motorhome and Sunwest resold it to a third party for Langley on August 23, 2012.

2. In September 2012, Langley informally agreed to purchase a bigger motorhome, a 2007 Beaver Patriot RV (the "RV"), from Sunwest for $270,648.00. Langley did not test drive this RV before buying it.

3. Langley made two $40,000 cash down payments for the RV. One on September 26, 2012, and one on October 30, 2012. Sunwest provided Langley with handwritten receipts for these payments. Langley withdrew this cash from his personal safe. Sunwest also kept both cash deposits in a safe and did not deposit them in a bank. Accordingly, there are no bank records documenting either transaction.

4. Langley discussed financing to purchase the RV with Central Valley Bank in October 2012.

5.      On November 17, 2012, Sunwest filed a Vehicle Certificate of Ownership with the Washington Department of Licensing, and on November 19, 2012, the Department of Licensing issued a title to the vehicle in Sunwest's name.

6.      On November 21, 2012, Langley signed a purchase order to purchase the RV and a promissory note for a loan from Central Valley Bank in the amount of $193,520.00 to cover the purchase price not paid in cash. Langley never test drove the RV before purchasing it.

7.      On March 5, 2013, Langley submitted a Vehicle Certificate of Ownership Application to the Washington Department of Licensing.

8.      The Department of Licensing issued a "Title Purposes Only" (TPO) title to Langley for the RV on March 8, 2013. TPO titles are generally used by wholesalers and retailers. Generally, sales tax has not been paid on a vehicle with a TPO title, and such vehicles are not registered to drive on the road.

9.      The owner of Sunwest, Steve Walsh attributed the delay in registering the vehicle in Langley's name to his general difficulties maintaining proper bookkeeping.

10.     Langley insured the RV with GEICO in April 2013.

*The Rebuild*

11.     The RV had previously been totaled in an accident and had a Texas Salvage Vehicle Title.

FINDINGS OF FACT AND CONCLUSIONS
OF LAW - 5

12.     Sunwest had purchased the RV at an auction for $50,500 in June 2012.

13.     The RV had front-end damage, but Walsh determined that it had no frame damage, and he believed he could rebuilt it for a profit.

14.     Walsh estimated he could rebuild the RV for a cost of $80,000 to $100,000. Walsh secured a loan from his friend Joel Ylvisaker to cover the majority purchase price and cost of parts for rebuilding the RV.

15.     Sunwest maintained receipts for most of the parts and services it purchased to rebuild the RV, but it did not track labor costs. The total cost of the items tracked was $50,364.34.

16.     The rebuild was mostly completed when the Washington State Patrol inspected the RV on November 19, 2012. The purpose of this inspection was to certify that claimed repairs had in fact been completed and that stolen parts were not used.

17.     Sunwest stored the RV for Langley over the winter. When it was brought out in the late spring. Walsh noticed several items that needed minor repair, including a switch for the RV's generator.

18.     Sunwest was unable to repair the generator switch and scheduled a an appointment with a dealership, Rus Dean RV, in Pasco, Washington to repair the switch.

FINDINGS OF FACT AND CONCLUSIONS OF LAW - 6

*The Fire*

19.     As Sunwest employee David Hubbard was driving the RV to Rus Dean RV in Pasco for repairs to the generator switch on June 10, 2013, the RV caught fire. The fire began at approximately 5 p.m.

20.     Hubbard was unable to put the fire out, and the fire completely destroyed the RV.

21.     Langley reported the loss to GEICO the following morning, on June 11, 2013.

22.     Langley never drove the RV at any time before it was destroyed by fire. Langley had no personal possessions in the RV at the time of the fire.

*Insurance Investigation*

23.     Shortly after the fire, GIECO sent a field investigator, who observed the RV and determined it was a total loss.

24.     GEICO briefly interviewed Langley about the fire in its initial investigation.

25.     GEICO assigned the claim to its Special Investigation Unit to investigate the loss. It is GEICO's policy to assign all total vehicle losses due to fire to the Special Investigation Unit.

26.     GEICO completed an origin and cause report on June 20, 2013, which indicated where the fire started and its likely cause.

FINDINGS OF FACT AND CONCLUSIONS
OF LAW - 7

27.     After conducting an initial investigation, GECIO determined that the claim investigation should be handled by an attorney. GEICO made this decision because the claim was unusually complicated and because several red flags were present that it believed could be indicators of fraud.

28.     Those red flags included that (1) the RV was totally destroyed by fire relatively soon after the policy was issued; (2) the RV was not being driven by Langley at the time of loss; (3) Langley had no personal property inside the RV; (4) the RV had a previous salvage title, which had not been disclosed to GEICO; (5) the RV was not registered in Langley's name within 45 days of the sale; and (6) that the RV had a TPO title.

29.     Several of these factors raised concern that Langley did not actually have possession and control of the RV at the time of the fire, and that he may instead have been financing repairs and sale of the RV.

30.     GEICO retained attorney Rory Leid to work on the claim in early July 2013.

31.     On July 17, 2013, Leid sent a letter to Langley to schedule examinations under oath (EUO) with Langley and his wife and requesting that Langley provide certain additional documentation, including photos, bank and other financial records, and ownership paperwork.

32.     Langley's EUO was scheduled for August 12, 2013.

FINDINGS OF FACT AND CONCLUSIONS
OF LAW - 8

33.    Mr. Leid's firm typically schedules EUOs roughly three weeks out to give people time to make arrangements for their schedules.

34.    Claims generally do not require a EUO, but Leid determined an EUO was necessary in this case because the claim was complicated and included the red flags noted above that could indicate fraud.

35.    Langley sent some of the requested materials to Leid. These materials were received on July 31, 2013, and included: (1) receipts from Sunwest; (2) a printout showing parts purchased; (3) a Washington State Patrol form; (4) photographs of the RV; (5) bank records; and (6) the owner's manual for the RV.

36.    After receiving information from Langley and following the EUO, GEICO became aware of additional facts that raised concerns, including:

a.    That Langley never took possession of the RV. The RV remained at Sunwest's storage lot up until the day it was driven to Pasco for repairs and caught fire. This was contrary to Langley's representation in his application that he intended to store the RV at his home.

b.    Langley produced only hand written receipts for $80,000 in down payments he made with cash withdrawn from his personal safe. This raised questions concerning whether the payments were actually made.

FINDINGS OF FACT AND CONCLUSIONS
OF LAW - 9

c.  Sunwest applied for a vehicle title in its name after Langley allegedly agreed to purchase the RV and made a down payment, and the RV was not titled in Langley's name until four months after he purchased the RV.

d.  A significant portion of the proceeds from the loan for the RV was disbursed to a third party, Joel Ylvisaker, who had business and personal connections to Langley and Walsh.

e.  Langley provided accounting services for Sunwest and created the Sunwest corporate entities.

f.  Langley had previously bought another RV from Sunwest, which he never drove, and ultimately resold to Sunwest before purchasing the RV at issue here.

g.  There was no indication that sales tax had been paid on the RV.

37.    Leid also believed that Langely was being evasive and not cooperating with GEICO's investigation.

38.    On August 13, 2013, Leid requested that Langley authorize release of additional bank account information and information from Sunwest documenting that the RV was repaired. Langley provided these authorizations on August 22, 2013. Leid acknowledged receipt of the authorizations on August 27, 2013. Leid stated that he requested a 90-day authorization, but on the forms that were

returned, Langley changed the authorized period to 30 days. Leid testified that he did not notice the change.

39.     GEICO requested National Information Crime Bureau (NICB) records on August 13, 2013, in order to obtain a complete report of the vehicle's history, including sales tax information.

40.     GEICO interviewed several other witnesses in addition to Langley in August.

41.     Lied sent requests for records from Central Valley Bank and Sunwest, with Langley's signed authorizations, on October 17, 2013. Sunwest and Central Valley Bank rejected the requests because the authorization had expired.

42.     On October 22, 2013 GEICO received the information it had requested from the NICB.

43.     On October 29, Leid requested that Langley's attorney provide new authorizations so that GEICO could obtain information from Sunwest and Central Valley Bank that it needed to complete its investigation.

44.     Rather than immediately provide this authorization, Langley's attorney responded that Langley might provide these authorizations if GEICO provided a detailed explanation for its delay and how much additional time was needed for an investigation.

FINDINGS OF FACT AND CONCLUSIONS
OF LAW - 11

45.     Following two additional letters from Leid, Langley ultimately provided new authorization forms on November 15, 2013.

46.     GEICO again sent requests for records to Sunwest and Central Valley Bank on November 27, 2013.

47.     GEICO subsequently learned that the Central Valley Bank account number Langley had provided on the authorization forms was incorrect, and on December 6, requested that Langley provide the correct number.

48.     Sunwest provided documents to GEICO on December 6, 2013.

49.     Langley's attorney provided updated releases for Central Valley Bank, with the correct account number, on December 11, 2013.

50.     On December 12, 2013, Leid sent a letter to Sunwest stating that it appeared information was missing from the documents produced by Sunwest in response to GEICO's request, including proof of IRS filing, correspondence between Sunwest and other parties involved in the matter, a breakdown of the purchase price and payments, accounting of the labor completed by Sunwest, and photographs documenting the repairs.

51.     Sunwest responded that it had produced all of the records it had regarding the RV and the sale to Langley.

52.     GEICO received the records it requested from Central Valley Bank on January 29, 2014.

FINDINGS OF FACT AND CONCLUSIONS
OF LAW - 12

53.    GEICO ultimately determined that it had sufficient proof that Langley purchased the RV and that it did not have a sufficient basis to conclude Langley made any material misrepresentations when he applied for coverage or that he otherwise did not have an insurable interest in the RV. Accordingly, GEICO decided to afford coverage.

54.    GEICO consulted Scott Twomey at Poulsbo RV to determine the pre-loss value of the RV. Twomey estimated the value at $20,000, concluding that there was insufficient information to confirm that the RV had been fully restored, and that its only value was for salvage.

55.    GEICO did not rely on Twomey's appraisal; instead, it relied on the "only arm's-length transaction"—the auction purchase by Sunwest—to conclude that the pre-loss value was $50,500.

56.    GEICO investigator John Floyd explained the decision as follows: In his deposition testimony, Floyd was asked: "You ultimately decided not to go with your expert's actual cash value amount in Mr. Langley's vehicle; is that correct?" Floyd responded: "That is correct. . . . Because we wanted to give Mr. Langley the benefit of the doubt, and we agreed to go ahead and offer the amount that was paid allegedly by Sunwest at the time that they purchased it from Texas."

57.    Leid similarly explained: "So, one of the things that GEICO struggled with throughout is that the sale to Mr. Langley was not an arm's length

FINDINGS OF FACT AND CONCLUSIONS
OF LAW - 13

transaction. He was intimately involved with the business as an accountant and had knowledge and friendship, and so you couldn't necessarily trust the transaction. What GEICO elected to do is trust the only arm's length transaction that was present regarding the RV, and that was the arm's length transaction when Sunwest bought the RV from Texas."

58.     On February 19, 2014, GEICO sent Langley a coverage determination letter stating that it would pay $50,500, which it had determined was the actual cash value of the vehicle. This is the same amount Sunwest paid to purchase the RV at auction.

59.     Langley's expert, David Smith, estimated the pre-loss value of the RV at $242,863.66.

60.     To arrive at this figure, Smith reviewed the value of the base vehicle new, the title history of the vehicle, and the condition of the vehicle, and compared the list price of similar vehicles. Smith's information about the condition of the vehicle was based on discussions with Sunwest, Langley, and a review of photos. Smith then discounted the pre-loss value by 22 percent based on the RV having been rebuilt.

61.     Smith also calculated a daily loss of use value of $614.33, which was based on an average of daily rental rates for three roughly similar RVs.

1

*Procedural History*

2      62.     Langley filed this action in state court on May 6, 2014. Langley's

3  complaint alleges four claims against GEICO: That GEICO (1) breached its

4  implied duty of good faith and fair dealing under its contract with Mr. Langley;

5  (2) committed the tort of bad faith; (3) violated Washington's consumer protection

6  act; and (4) violated Washington's Insurance Fair Practices Act.

7      63.     GEICO removed this action to this court on May 27, 2014.

8      64.     On August 29, 2014 the Court granted GEICO's motion to compel

9  appraisal pursuant to the terms of the insurance contract.

10      65.     The parties attended an appraisal hearing on May 28, 2015, and on

11  June 3, 2015, the appraisal panel determined the actual cash value of the RV on

12  the date of loss was $170,000.00.

13                      **CONCLUSIONS OF LAW**

14                      *Jurisdiction and Venue*

15      1.     The Court has jurisdiction over all of Langley's claims pursuant to 28

16  U.S.C. § 1332.

17      2.     Venue is proper under 28 U.S.C. § 1391(b) because a substantial part

18  of the events giving rise to Langley's claims occurred in this judicial district.

19

20

FINDINGS OF FACT AND CONCLUSIONS
OF LAW - 15

*Bad Faith*

3.    Because it is undisputed that Langley and GEICO entered into an insurance contract that provided coverage for the loss of Langley's RV and that GEICO owed Langley a duty of good faith, Langley's contract and tort bad-faith claims may be analyzed together. *See Smith v. Safeco Ins. Co.*, 78 P.3d 1274, 1276 (Wash. 2003) ("[A]n insurer has a duty of good faith to its policyholder and violation of that duty may give rise to a tort action for bad faith."). To prevail on both of these claims Langley must prove, by a preponderance of the evidence, that GEICO breached its duty of good faith and that the breach proximately caused him damages. *Id.*

4.    To establish that an insurer breached its duty of good faith, a policyholder must show the insurer's actions were "unreasonable, frivolous, or unfounded." *Id.* at 1277.

5.    Langley alleges that the nature and duration of GEICO's investigation was unreasonable and that the amount GEICO eventually proposed to pay was inadequate and unreasonably low.

6.    Langley has not met his burden of proving, by a preponderance of the evidence, that the nature and duration of GEICO's insurance investigation was unreasonable.

FINDINGS OF FACT AND CONCLUSIONS
OF LAW - 16

a.    The evidence presented in this case demonstrates that this was an unusually complicated claim. Several indicators were present very near the outset of GEICO's investigation that justified a more-thorough-than-usual investigation, including that (1) the RV was totally destroyed by fire relatively soon after the policy was issued; (2) the RV was not being driven by Langley at the time of loss; (3) Langley had no personal property inside the RV; (4) the RV had a previous salvage title, which had not been disclosed to GEICO; (5) the RV was not registered in Langley's name within 45 days of the sale; and (6) the RV had a TPO title. After conducting additional investigation, and interviewing Langley, GEICO became aware of additional facts that required further investigation, including that: (1) Langley never took actual possession of the RV; (2) Langley produced only hand written receipts for $80,000 in down payments he made with cash withdrawn from his personal safe; (3) Sunwest applied for a vehicle title in its name after Langley allegedly agreed to purchase the RV and made a down payment; (4) a significant portion of the proceeds from the loan for the RV was disbursed to a third party, Joel Ylvisaker, who had personal and business connections with both Langley and Walsh; (5) Langley provided accounting services for Sunwest and created the Sunwest corporate entities; (6) Langley had previously bought another RV from Sunwest, which he never drove,

1  and ultimately resold to Sunwest before purchasing the RV at issue here; and (7)

2  there was no indication that sales tax had been paid on the RV.

3      b.    None of those facts prove that there was fraud or that Mr.

4  Langley misrepresented facts to GEICO—indeed GEICO ultimately decided to

5  afford coverage—but they all support the need for a thorough investigation that

6  took significant time.

7      c.    Some of the delay in the investigation can be attributed to

8  Langley's failure to fully cooperate with the investigation. In particular, Langley

9  could have simply obtained the documents GEICO was seeking from Central

10 Valley Bank and Sunwest or directed Central Valley Bank and Sunwest to provide

11 them to GEICO long before they were ultimately produced in December 2013 and

12 January 2014.

13     d.    GEICO has failed to adequately account for the delay between

14 when Leid received Langley's authorizations to obtain records from Sunwest and

15 Central Valley Bank on August 27, 2013 and when he sent the authorizations to

16 Sunwest and Central Valley Bank on October 17, 2013. However, this did not

17 contribute to any overall delay because GEICO did not receive a report it

18 requested from NICB until October 22, 2013.

19

20

FINDINGS OF FACT AND CONCLUSIONS
OF LAW - 18

e.    The Court finds that GEICO worked reasonably quickly to conduct its investigation of this unusually complicated claim. The eight month and nine day total duration of the investigation was not unreasonable.

7.    Langley has proven, by a preponderance of the evidence, that GEICO's February 19, 2014 settlement offer of $50,500 was unreasonable.

a.    Once GEICO decided to afford coverage, its obligation under the contract was to provide coverage for the pre-loss actual cash value of the RV.

b.    GEICO's expert determined that because it had previously been totaled in an accident, the RV's only value was for salvage, and estimated its value at $20,000. Plaintiff's expert, by contrast, testified that only a 20 percent discount should be applied for a properly rebuilt vehicle.

c.    The Court need not decide whether it would have been reasonable for GEICO to rely on its expert's appraisal, and to offer to settle Langley's claim for $20,000 because GEICO did not rely on this appraisal. Instead, GEICO decided to set the pre-loss value at the amount Sunwest paid to purchase the RV at auction, $50,500.

d.    GEICO offers no justification for this amount other than that it was based on the last "arm's length transaction" involving the vehicle. GEICO's concerns about the nature of the underlying purchase may have been relevant to a

FINDINGS OF FACT AND CONCLUSIONS
OF LAW - 19

1  decision to deny coverage, but those concerns should not have affected GEICO's

2  determination of pre-loss actual cash value once it decided to afford coverage.

3      e.    GEICO had before it more than $50,000 in receipts from Sun

4  West and photographs showing that the RV had been rebuilt, as well as statements

5  from Walsh GEICO that he rebuilt the RV. GEICO offered no legitimate

6  justification for completely disregarding this evidence.

7      8.    The Court concludes that GEICO's unreasonable offer to settle his

8  claim proximately caused Langley's damages. However, the Court will withhold a

9  final decision on the amount of damages pending supplemental briefing from the

10  parties.

11                    *Consumer Protection Act.*

12      9.    To prevail on a Consumer Protection Act (CPA) claim, a plaintiff

13  must show: (1) an unfair or deceptive act or practice; (2) in trade or commerce; (3)

14  which affects the public interest; (4) that injured the plaintiff's business or

15  property; and (5) that the unfair or deceptive act complained of caused the injury

16  suffered. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105

17  Wash.2d 778, 784–85 (1986).

18      10.    WAC 284-30-330(7) provides that it is an unfair settlement practice

19  to "Compel[] a first party claimant to initiate or submit to litigation, arbitration, or

20  appraisal to recover amounts due under an insurance policy by offering

FINDINGS OF FACT AND CONCLUSIONS
OF LAW - 20

substantially less than the amounts ultimately recovered in such actions or proceedings."

11.    Absent a defense of reasonableness, *see Starczewski v. Unigard Ins. Co.*, 810 P.2d 58, 61 (1991), violation of WAC 284-30-330(7) is an unfair and deceptive act or practice in trade or commerce for the purpose of the CPA. *See Dombrosky v. Farmers Ins. Co. of Wash.*, 928 P.2d 1127, 1136 (Wash. App. 1996).

12.    As discussed, GEICO's offer to pay Langley $50,500 to settle his insurance claim was unreasonable and unsupported.

13.    GEICO's unreasonable offer caused Langley to initiate this litigation and to proceed with appraisal of the actual cash value of the loss.

14.    Langley ultimately recovered $170,000 from the appraisal, more than three times GEICO's original offer.

15.    The Court concludes that GEICO's offer of $50,500 violated WAC 284-30-330(7) and was therefore an unfair or deceptive practice.

16.    The Court concludes that GEICO's action in violation of the CPA proximately caused injury to Langley.

17.    As discussed, the Court will withhold decision on the amount of damages pending further briefing from the parties.

FINDINGS OF FACT AND CONCLUSIONS OF LAW - 21

*Insurance Fair Conduct Act*

18.     As the Court explained in its order denying GEICO's motion for partial summary judgment on February 26, 2015, to maintain a cause of action under the IFCA, Plaintiff must prove (1) an unreasonable denial of a claim for coverage, (2) an unreasonable denial of payment of benefits, or (3) a violation of WAC 284-30-330, 350, 360, 370, 380, or an unfair claim settlement practice rule adopted under RCW Section 48.30.010 by the insurance commissioner that is codified in chapter 284-30 of the Washington Administrative Code. Wash. Rev. Code § 48.30.015.

19.     As discussed, GEICO's offer to settle Langley's claim for $50,500 was unreasonable and violated WAC 284-30-330(7).

20.     GEICO's action was therefore a violation of the IFCA.

21.     The Court concludes that GEICO's action in violation of the IFCA caused Langley actual damages.

22.     The Court will withhold decision on the amount of actual damages and whether to impose additional damages pursuant to RCW Section 48.30.015(2) pending additional briefing from the parties.

Accordingly, **IT IS HEREBY ORDERED**:

**1.**     Defendant's Motion for Judgment on Partial Findings Regarding Insurance Fair Conduct Act Claim, **ECF No. 291**, is **DENIED**.

FINDINGS OF FACT AND CONCLUSIONS
OF LAW - 22

**2.**   Defendant's Rule 52(c) Motion for Judgment Dismissing Plaintiff's Claim for Injunctive Relief, **ECF No. 292**, is **GRANTED.**

**3.**   The parties shall file supplemental briefing on the issue of damages consistent with these findings and conclusions on or before **Thursday, October 6, 2016**. The parties' briefs shall not exceed **15 pages**.

**IT IS SO ORDERED.**  The District Court Executive is directed to enter this Order and provide copies to all counsel.

**DATED** this 23rd day of September 2016.

SALVADOR MENDOZA, JR.
United States District Judge

FINDINGS OF FACT AND
CONCLUSIONS OF LAW **-** 23